IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| SAGA PETROLEUM, LLC,<br><br>      Plaintiff,<br><br>vs.<br><br>ARROWHEAD DRILLING, LLC,<br>and BILL MAXWELL,<br><br>      Defendants.<br>_____<br><br>ARROWHEAD OIL & GAS<br>DRILLING, a Montana Joint<br>Venture of Arrowhead Drilling,<br>LLC and B&D Oil & Gas, Inc.,<br><br>      Counterclaimant & Third-<br>      Party Plaintiff,<br><br>vs.<br><br>SAGA PETROLEUM, LLC,<br>SAGA PETROLEUM<br>CORPORATION, and PUBLIC<br>GAS PARTNERS, INC.,<br><br>      Counterclaim Defendant &<br>      Third-Party Defendants,<br>      respectively. | CV-08-110-BLG-RFC-CSO<br><br><u>FINDINGS AND<br>RECOMMENDATIONS OF<br>UNITED STATES<br>MAGISTRATE JUDGE</u> |

-1-

Currently pending for decision are:

(1) Motion for Partial Summary Judgment [Doc. No. 29] filed by Arrowhead Oil & Gas  Drilling, LLC, a Montana joint venture, and Bill Maxwell (collectively "Arrowhead"); and

(2) Motion to Strike Affidavit of Peter Mueller, Plaintiff's Exhibits A and B and Deposition Exhibits 62 and 80 [Doc. No. 36], also filed by Arrowhead.

Arrowhead seeks summary judgment on the grounds that Plaintiff, Saga Petroleum, LLC (Saga) cannot set forth a prima facie case for alleged misrepresentations with respect to an oral agreement and breach of contract concerning the drilling of natural gas wells. Further, Arrowhead requests summary judgment be entered in its favor on Count II of its counterclaim and all third party claims   For the reasons discussed below, the Court recommends that the motions be denied.

I. <u>BACKGROUND</u>

This controversy arises from disputed drilling agreements for two gas wells located in Golden Valley and Stillwater Counties, identified

as Big Coulee 6-3 (6-3) and Big Coulee 31-4 (31-4) (collectively "Wells").
Saga, as the operator of the Wells, contracted with Arrowhead Oil &
Gas  Drilling, LLC, a drilling contractor, to drill the Wells.  Defendants'
Statement of Undisputed Facts (Court Doc. 31) (DSUF) ¶¶ 21, 62.

Arrowhead Oil & Gas Drilling, LLC is a joint venture between
Arrowhead Drilling, LLC, and its principals (John Woods, Jr., Michael
T. Schmechel, and Marvin J. Brown) and B& D Oil & Gas, Inc., and its
principals (Bill Maxwell, his wife, Marilyn Maxwell, and their son, Don
Maxwell).   Court Doc. 31-6 (Depo. Exh. 1); DSUF at ¶ 1.

A.    Well 6-3

The Joint Venture and Saga entered into a contract dated as of
August 16, 2007, regarding the drilling of the 6-3 well (6-3 Contract).
Id. at ¶¶ 19, 20.   On September 28, 2007, Arrowhead began drilling 6-3
and encountered an unexpected zone of gas before reaching total depth,
which presented problems.  Id. at  ¶ ¶ 31, 32.  Consequently, on
October 11, Peter Mueller (Mueller), Saga's Vice President, traveled to
the site to personally oversee operations. Id. at  ¶¶ 11, 33.  In the early
hours of October 13, 2007, Mueller and  Maxwell  met to discuss how
best to proceed.  Id. at  ¶ 36.

After weighing several options, the parties discussed leaving Arrowhead's drill pipe and other equipment in the well bore and producing gas through the drill string.  Id. at ¶¶ 36, 37.  It is undisputed that Saga proposed to purchase Arrowhead's "down hole equipment" which included the drill pipe, a drill bit, and a stabilizer. Id. at ¶ 38.  During the discussion, Maxwell estimated a $28 per foot value for the pipe.  Id. at ¶ 39.  The parties acknowledge that, at that meeting, the possibility of Arrowhead repurchasing or crediting the drill string to Saga was discussed.  Id. at ¶¶ 43, 44.  For some time, the 6-3 well did produce natural gas from the drill pipe.  Id. at ¶ 50.

On or about October 31, 2007, Arrowhead invoiced  Saga for work on the 6-3 well, including charges of $54,650 for the drill pipe and components.  Id.  at ¶ 56.   On October 31, 2007, Saga paid the invoice. Id. at ¶ 57.   In February 2008 the drill string was removed from 6-3 by Arrowhead and placed at Saga's compressor station.  Id.  at ¶ ¶ 76, 77.

On March 20, 2008, Mueller emailed Woods of Arrowhead inquiring how he would like to handle the credit for the pipe.  Id. at ¶ 82.   On the same day, Woods replied that Arrowhead had purchased a new drill string and had no need for more.  Id.  At the center of the

parties' dispute regarding this well is whether there was an enforceable
oral agreement for Arrowhead's repurchase of the pipe.

      B.    <u>Well 31-4</u>

      Between October 31, 2007, and February 15, 2008, Arrowhead
and Saga negotiated a contract for drilling another gas well in the Big
Coulee Field.  <u>Id.</u>  at ¶ 59.  On February 28, 2008, the parties signed a
contract concerning the drilling of well 31-4 (31-4 Contract).  <u>Id.</u> at ¶
62.  On March 19, 2008, Arrowhead moved its equipment from the 6-3
site to the 31-4 site, and began drilling on March 24, 2008.  <u>Id.</u> at ¶ 79,
83.  On April 24, 2008, after some breakdowns and work slowdowns,
Mueller, acting through drillsite superintendent Daryl LeFevre,
ordered Arrowhead' crew and equipment off the 31-4 site.  <u>Id.</u> at ¶ ¶ 88,
91.

      On May 8, 2008, Arrowhead invoiced Saga for $152,762.84 for
work and costs on the 31-4 well through April 25, 2008.  <u>Id.</u> at ¶ 95.
After no payment was received, Arrowhead again invoiced Saga, and
included a late fee.  <u>Id.</u> at ¶ 98.  On or about June 14, 2008, Arrowhead
received a letter from Saga with a check for $67, 522.00 in "full
payment" of the May 8, 2008 invoice.  <u>Id.</u> at ¶ 99.  The letter explained

that the check amount took into account the credit for the pipe it
purchased from Arrowhead.  Id. at ¶ 100.  After twice returning the
check, Arrowhead accepted a check for $67,522 without conditions or
restrictive endorsements.  Arrowhead then filed an oil and gas lien in
Golden Valley County to secure what it considered to be the unpaid
balance of $96,833, plus attorneys' fees and accruing finance charges.
Id. at ¶ ¶ 101-105.

## II.  STANDARD OF REVIEW

A party is entitled to summary judgment as a matter of law if "the
pleadings, depositions, answers to interrogatories, and admissions on
file, together with affidavits, if any, show there is no genuine issue as to
any material fact."  Fed.R.Civ.P. 56(c); see Bahn v. NME Hosps., Inc.,
929 F.2d 1404, 1409 (9th Cir.1991). The moving party carries the initial
burden of proof and meets this burden by identifying portions of the
record on file that demonstrate the absence of any genuine issue of
material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-24, 106 S.Ct.
2548, 91 L.Ed.2d 265 (1986).  Once the initial burden is satisfied, the
burden shifts to the non-moving party to demonstrate through the
production of probative evidence that there remains an issue of fact to

be tried. Id.

The court must view the evidence in the light most favorable to the non-moving party.  Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir.2000) (citations omitted).  All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party.  MetroPCS, Inc. v. City and Co. of San Fran., 400 F.3d 715, 720 (9th Cir.2005) (citation omitted).  Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Ins. Co. of N. Am., 638 F.2d 136, 140 (9th Cir.1981) (citing Fed.R.Civ.P. 56(c)).

However, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).  The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

III.  <u>ANALYSIS</u>

    A.  <u>Statute of Frauds</u>

The first issue is whether an enforceable oral agreement exists with respect to a repurchase or credit for the drill string.  Arrowhead argues that a writing is required under Mont. Code Ann. § 30-2-201 (1), which provides that "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by the party's authorized agent or broker."  Arrowhead contends that there is no such writing evidencing a repurchase or credit agreement and thus any alleged oral agreement is unenforceable under Montana's statute of frauds.

Saga disagrees and argues that the oral agreement in question falls within an exception to the statute of frauds.  Namely,  Mont. Code Ann. § 30-2-201 (3) which provides:

    A contract which does not satisfy the requirements of
    subsection (1) but which is valid in other respects is
    enforceable:
    ...
    (b) if the party against whom enforcement is sought admits

in the party's pleading, testimony, or otherwise in court that
a contract for sale was made, but the contract is not
enforceable under this provision beyond the quantity of
goods admitted; or

(c) with respect to goods for which payment has been made
and accepted or which have been received and accepted
(30-2-606).

Saga argues that Arrowhead admits partial performance which

evidences an oral agreement and defeats application of the statute of

frauds.  Further, Saga argues that the application of the statute of

frauds presents a genuine issue of material fact which must be

presented to a jury.

It is undisputed that at the October 13, 2007 meeting, Maxwell

and Mueller discussed the issue of repurchase of the pipe.  DSUF ¶ 44.

Maxwell represented that "we would be open to repurchase" the drill

pipe.  Id.  Specifically, Maxwell explains:

Q.    Was there discussion about crediting back when you
      recovered the drill pipe?

A.    There was discussion at some point in time, whether that
      was before - -whether that was at that point in time or
      whether it was after I had gotten the ok to sell the drill pipe
      from John Woods to Saga.

Q.    Let's not worry about the time of it, let's just worry about

the content of it, the substance of it, what was said on that topic?

A.   They asked if we would be open to repurchase the drill pipe.

Q.   And the response was what?

A.   My response was yes.

Court Doc. 31-1 at 15 (B. Maxwell. Depo. at 94, ll. 3-15).

The Montana Supreme Court has previously found that application of the statute of frauds may present genuine issues of material fact for the jury. Beaverhead Bar Supply, Inc. v. Harrington, 247 Mont. 117, 123 (1991) (finding genuine issues as to whether statute of frauds barred distributor from seeking enforcement of an alleged oral agreement). Other courts have determined that application of the statute of frauds raises fact issues unless only one inference can be drawn from the evidence. Garter-Bare Co. v. Munsingwear, Inc., 650 F.2d 975, 981 (9th cir. 1981) (citing Caplan v. Roberts, 506 F.2d 1039, 1042 (9th Cir. 1974)). Generally, whether the circumstances of a particular case fall within an exception to the statute of frauds is a question of fact. See Adams v. H & H Meat Products, Inc., 41 S.W.3d 762, 775 (Tex. App. Corpus Christi 2001). Moreover, whether the

performance that occurred is sufficient to establish the partial performance exception to the statute of frauds may present a question for the jury. See Investment Properties Co., Inc. v. Watson, 278 Ga. App. 81, 159 (2006).

The Court finds that more than one inference could plausibly be drawn from the evidence concerning repurchase or credit for the drill string. At least some portion of an oral agreement was performed which is evidenced by Saga's payment of Arrowhead's invoice for the drill string. Whether the performance is sufficient to invoke the exception is a question of fact. Consequently, Saga has raised sufficient issues to preclude summary judgment on the issue of whether the alleged oral agreement is unenforceable. A jury should determine if application of the statute of frauds is proper. Therefore, this Court recommends that Defendants' Motion for Partial Summary Judgment on that issue be denied.

B. Agency of Bill Maxwell

Arrowhead contends that, even assuming the oral agreement was enforceable under the statute of frauds, Maxwell had no authority to bind the Joint Venture. In support, Arrowhead argues that Maxwell

had no express authority to sell Arrowhead's equipment since he had no

authority to do so under the Joint Venture agreement.

At the outset, it is undisputed that B& D Oil & Gas,

Inc.(Maxwell's family owned corporation) is a member of the Joint

Venture.  DSUF ¶ 3.  Generally, "[w]hether a joint venture is actually a

partnership is a question of fact and depends on the rights and

responsibilities assumed by the joint venturers, ... even if the

documents controlling the arrangement expressly state that no

partnership is formed."  46 Am. Jur. 2d Joint Ventures § 5 citing

Accolades Apartments, L.P. v. Fulton County, 274 Ga. 28, 549 S.E.2d

348 (2001).  Further,  Montana's Uniform Partnership Act  provides

that a partner's actions can bind a partnership if that partner's actions

are within the ordinary course of the partnership business. Mont. Code

Ann. § 35-10-301(1).  Specifically, this statute provides:

> [E]ach partner is an agent of the partnership for the purpose
> of its business. An act of a partner, including the execution
> of an instrument in the partnership name, for apparently
> carrying on in the ordinary course of the partnership
> business or business of the kind carried on by the
> partnership binds the partnership unless the partner has no
> authority to act for the partnership in the particular matter
> and the person with whom the partner is dealing knows or
> has received a notification that the partner lacks authority.

Consequently, there are genuine issues surrounding whether the Joint Venture should be treated as a partnership which could plausibly confer agency authority to Maxwell individually or Maxwell acting for B& D Oil & Gas, Inc.

Even assuming no agency authority exists by virtue of the Joint Venture, when the facts pertaining to the existence of ostensible or apparent agency authority are conflicting, or conflicting inferences may be drawn from the evidence, the question is one of fact for the jury. See <u>C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.</u>, 213 F.3d 474, 480 (9th Cir.2000) (ostensible agency is question of fact inappropriate for summary judgment "unless only one conclusion may be drawn" from evidence).   The Montana Supreme Court has long held, "that secret instructions, such as that a general agent of a corporation in charge of a business is required to obtain permission from an executive officer before expending money, are not binding upon persons dealing with such agent in good faith and in reliance upon his apparent authority." <u>Pue v. Northern Pac. Ry. Co.</u>, 78 Mont. 40, 252 P. 313, 316 Mont. (1926). (citation omitted).

Aside from stating that Saga knew it was doing business with a

joint venture, Arrowhead produces no compelling evidence that Saga was aware of any limitation on Maxwell's authority.  On the contrary, Saga argues that significant inferences could be drawn from the evidence that Maxwell had agency authority by virtue of his position in the Joint Venture as well as ostensible and apparent authority under Montana law.  Saga sets forth several facts which, it argues, demonstrate Maxwell's authority.

The following facts are reflected in the record:  (1) Maxwell's family-owned company is a member in the Joint Venture; (2) Maxwell's company owned some portion of the pipe; (3) Arrowhead invoiced Saga for the drill string and the invoice was promptly paid.  Arrowhead admits that Maxwell's company owned a portion of the drill pipe. See [Doc. No. 35] (Deft.'s Reply Brief p. 10). This fact coupled with his company's membership in the Joint Venture creates a plausible conflicting inference that could be drawn with respect to Maxwell's authority[1].  The Court finds Saga has raised sufficient genuine issues

_____

[1] Saga argues that a potential conflict arises because Maxwell might be subject to personal liability if he acted outside the scope of his actual authority.   Because the Court finds a question of fact exists with respect to his agency authority (apparent or ostensible) it is

surrounding Maxwell's authority to bind Arrowhead to defeat summary judgment.

C.  Saga's Claim for Misrepresentation Regarding Drill String Repurchase

Saga sets forth a claim for misrepresentation concerning the alleged promise to repurchase the drill string.  See First Amended Complaint [Doc. No. 12] (Complt.) ¶¶ 10, 11.  Arrowhead argues that Saga can not satisfy two crucial elements for a fraud claim. Specifically, Arrowhead contends that Saga can prove neither a "representation" nor "reasonable reliance", elements one and seven of a fraud claim.

Arrowhead's argument is premised on the assumption that

_____

unnecessary to address this concern at this time.  Counsel should be mindful, however, that  Rule 1.7(a) of the Montana Rules of Professional Conduct provides:

> Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:  (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person....

Maxwell's statements presented a promise to pay money in the future

which, it argues, cannot be construed as a "representation" in the

context of a fraud claim.  However, as discussed above, the Court found

an issue of fact with respect to the alleged oral agreement.  That issue

of fact extends to Saga's claim for misrepresentation and precludes

summary judgment.

D.   <u>Saga's Misrepresentation Claim Regarding Equipment and
     Capabilities</u>

Saga claims that Arrowhead misrepresented that it could perform

the 31-4 Contract's rig and crew requirements. Complt. ¶ 13.

Arrowhead argues it is entitled to summary judgment on Saga's

misrepresentation claim because Saga has "offered no competent

evidence" concerning Arrowhead's  representations prior to entering the

31-4 Contract.   In support, Arrowhead parses out deposition testimony

which indicates that Saga accepted the equipment, which, it argues, is

contrary to Saga's allegations.  Arrowhead also argues that Saga has

not presented any competent evidence that Arrowhead made any

representation knowing such representation to be untrue.  Further,

Arrowhead contends that  any alleged failure to fully perform a promise

is not evidence that the promise was made with no intention to keep it. See Deft.'s Reply Brief p. 14.

Saga argues that even assuming it accepted the equipment, a finding of a misrepresentation is not precluded.  Further, Saga counters that Arrowhead made certain representations concerning its rig and crew that ultimately proved false.  Specifically, Saga argues that the contract provides that a crew would be on site 24 hours per day which, it contends, did not occur.

The Court concludes that Saga's alleged acceptance of the equipment does not preclude a claim for misrepresentation.  Arrowhead or Maxwell's subjective intent and knowledge with respect to any alleged representation raises factual issues better left to a jury. Further, the Court finds that to the extent the parties disagree, Saga has raised issues of material fact sufficient to defeat summary judgment.

E.  Arrowhead's Counterclaim, Count II

In Count II of its counterclaim Arrowhead alleges that Saga breached the 31-4 Contract because Saga failed to submit objections to or make payment on Arrowhead's invoice on 31-4 within the fifteen day

-17-

deadline provided in Section 5.3 of the 31-4 Contract.   Arrowhead

relies on  Section 5.3 of the 31-4 Contract which provides:

> "Disputed Invoices and Late Payment: …. Any sums
> (including amounts ultimately of the disputed item (<u>sic</u>) may
> be withheld until settlement of the dispute, but timely
> payment shall be made of any undisputed portion. Any sum
> (including amounts ultimately paid with respect to a
> disputed invoice) not paid within the above specified days
> shall bear interest at the rate of 1.5 percent or the
> maximum legal rate, whichever is less, per month from the
> due date until paid.  If Operator does not pay undisputed
> items within the above time frame, Contractors may
> suspend operations or terminate this contract … .

Court Doc. 31-11 at 3.

Saga counters that its April 21, 2008 email inquiry about concerns

with rig staffing, downtime and equipment put Arrowhead on notice of

a dispute.  Further, Saga  cites cases in which courts found that similar

15-day clauses do not preclude a later dispute of an invoice. See  <u>Lobo</u>

<u>Well Service, LLC v. Marion Energy, Inc.</u>, 2008 WL 3926121 (D. Utah

2008) and <u>Grynberg v. Grey Wolf  Drilling Company</u>, 2009 WL 3926121

(Tex. Ct. App. 2009)(not published).

The Court is persuaded by the reasoning of the cases cited.  The

31-4 Contract provides that the consequence for non-payment of sums

invoiced is that such sums bear interest and the contractor may

suspend operations or terminate the contract.  DSUF ¶ 69.  The 31-4
Contract does not provide that failure to dispute an invoice within the
15-day period results in the operators' waiver of future objections.
Therefore, Section 5.3 does not, on its face, preclude a latter dispute of
the invoice.

Even assuming that Arrowhead's argument regarding the 31-4
Contract was well taken, the earlier question of an alleged oral
repurchase agreement poses a question of fact for the jury as discussed
supra.   Conceivably, resolution of that issue could effect Saga's duty to
timely object to the invoice.

Mont. Code Ann. § 28-1-104 provides:

> Whenever by the terms of an obligation a party to the
> obligation incurs a forfeiture or a loss in the nature of a
> forfeiture by reason of the party's failure to comply with its
> provisions, the party may be relieved from the obligation
> upon making full compensation to the other party, except in
> case of a grossly negligent, willful, or fraudulent breach of
> duty.

This Court previously found that the repurchase issue presented a
question for the jury which also concerns full compensation. Arrowhead
has not demonstrated that Saga's conduct in failing to dispute the
invoice falls within the realm of a grossly negligent, willful, or a

fraudulent breach of duty as a matter of law.   For these reasons, the Court finds this issue hinges on genuine issues of material fact.

F.  Third Party Claims

Because the Court finds that sufficient genuine issues exist and recommends Arrowhead's motion be denied as to Saga's claims, it also recommends denial as to third party claims which  mirror those of Saga.

G.  Arrowhead's Motion to Strike

The basis for Arrowhead's Motion to Strike is that the challenged Affidavit and exhibits fail to comply with Fed.R.Civ. P. 56(e). Specifically, Arrowhead seeks to strike certain statements on the basis of  inadmissable hearsay, statements made without personal knowledge or affidavit statements which contradict deposition testimony. However, as the Court discussed  supra, Saga survives summary judgment without considering the disputed evidence.  Arrowhead's objections are  preserved for the record.  Consequently, the Court recommends that Arrowhead's Motion to Strike be denied without prejudice as moot.

VI.   <u>CONCLUSION</u>

Based on the foregoing, IT IS RECOMMENDED that:

1.     Defendants' Motion for Partial Summary Judgment [Doc. No. 29]

be DENIED.

2     Defendants' Motion to Strike Affidavit of Peter Mueller, Plaintiffs'

Exhibits A and B and Deposition Exhibits 62 and 80 [Doc. No. 36]

be DENIED as moot.

IT IS ORDERED that the Clerk shall serve a copy of these

Findings and Recommendation of United States Magistrate Judge upon

the parties.  The parties are advised that, under to 28 U.S.C. § 636, any

objections must be filed with the Clerk of Court and copies served on

opposing counsel within fourteen (14) days after receipt hereof, or

objection is waived.

DATED this 11th day of March, 2010.

/s/ Carolyn S. Ostby_____
United States Magistrate Judge
